## Wallace *v.* Patriotic Order Sons of America, Appellant.

Argued October 2, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*J. Webster Jones,* for appellant.

*Bryan A. Hermes,* for appellee.

Opinion by Parker, J., January 29, 1937:

Plaintiff has a judgment after trial before a judge without a jury in the municipal court and defendant, having appealed, complains of the refusal of its motion for judgment n. o. v. The question raised as presented to us by the assignments of error and arguments is definite and limited. The plaintiff seeks to recover from the defendant sick and death benefits and her right to recover turns upon the validity of an alleged change in the by-laws of the defendant. If the change was valid she is not entitled to recover anything.

By the terms of the by-laws as they were prior to April 27, 1933, a member in good standing, in case of disability which incapacitated him from following his usual or some other occupation, was entitled to receive $5 per week for the first thirteen weeks, $3 per week for the next ensuing thirteen weeks and $2 per week for the next thirteen weeks and in case of his death his widow was entitled to receive $250. The lodge undertook by resolution to reduce these benefits and adopt a new and temporary schedule of payments for disability and death. The defendant has paid the plaintiff the amount that would be due under the revised schedules and plaintiff has sued for the difference. There being no disputed question of fact, the plaintiff is entitled to recover if the change was not valid, otherwise she is not.

The defendant, Patriotic Order Sons of America. Washington Camp No. 50, a subordinate lodge of the Pennsylvania State Camp, Patriotic Order Sons of America, had adopted by-laws providing for the benefit as claimed by plaintiff and prescribing how those by-laws might be amended. The provision governing amendments was as follows: "Section 1. Amendments or alterations to these local laws shall be submitted in writing, signed by no less than three members at least two weeks previous to their being acted upon and the recording secretary shall send notice to all members one

week previous to final action. All laws and amendments previously adopted which conflict with any of these laws herein contained shall be and hereby are repealed." When the attempt was made to reduce the benefits, it is conceded, no amendment was submitted in writing signed by any member or members at any time prior to the adoption of the resolutions and no notice was given to the members of the proposed change prior to final action.

If these by-laws govern the situation, such an important change could not be made by a resolution without previous notice to the members as provided by the by-laws: *Luks v. Blatt,* 65 Pa. Superior Ct. 564. The resolution undertook to effect an important change in the by-laws which could only be made in the manner therein prescribed: 7 C. J. 1072.

But the defendant contends that the changes were made by authority of the state camp to which the defendant was subordinate and in accord with the by-laws of the parent association. C. Ross Wallace, plaintiff's decedent, became ill on September 1, 1933 and was incapacitated until the date of his death March 4, 1934. The attempted change in the by-laws as to disability benefits was made in April, 1933 and that as to death benefits in September of the same year. Substantially the same procedure was followed in each case and the facts will be stated with reference to the first action. At a meeting of Camp No. 50, held on April 20, 1933, the minutes show that a statement was made at the meeting that the trustees of the lodge were of the opinion the sick benefits should be temporarily reduced in amounts which were the same as they subsequently attempted to adopt and that on motion the recommendation of the trustees "was accepted by the camp and the secretary was instructed to apply for special dispensation for the state camp and to also request authority to dispose of the payment of sick benefits for the first week

of illness." In reply to an inquiry to the state camp, the following was received: "Headquarters Pennsylvania State Camp, P. O. S. of A. 1317-19 North Broad Street Philadelphia, Pa., April 27, 1933 To the President, Officers and Members of Washington Camp No. 50 Pa., P. O. S. of A. Brethren: In accordance with your request and upon the recommendation of Brother Martin F. Lare District President of your district, permission is hereby granted to your Camp to dispense with your laws relative to sick benefits and reduce your sick benefits for a period of six months as follows: From $5.00 per week for 13 weeks to $2.50 From $3.00 per week for 2nd 13 weeks to $1.50 From $2.00 per week for 3rd 13 weeks to $1.00 No benefits to be paid for first week of illness Harry J. Farr State President Attest: (Seal) C. B. Helms State Secretary." In the minutes of a meeting of Camp No. 50 held on April 27, 1933 the following appears: "Communication from State President read, granting permission to dispense with our laws relative to sick benefits and reduce the sick benefits for a period of six months, as follows: From $5.00 to $2.50 per week for 13 weeks From $3.00 to $1.50 per week for 13 weeks From $2.00 to $1.00 per week for 13 weeks, and no benefits to be paid for first week of illness. On motion of Bros. Martin Lare and George Lare same was ordered received and concurred in."

The portion of the record printed by the appellant dealing with the by-laws of the state camp is apparently far from complete and there is a consequent confusion as to those by-laws. While plaintiff's exhibit 4 is said to be a copy of the last by-laws and plaintiff's exhibit 3 a previous set of by-laws, we are compelled to look at exhibit 3 to find some of the provisions on which the defendant primarily depends. To avoid delay we will give the defendant the benefit of the inference and assume that the statement in the appellant's argument to

the effect that the same provision appeared in both sets of state camp by-laws is correct.

The state camp by-laws (Art. VIII, §1) provide that: "Each camp of the order shall have the power to adopt local laws not inconsistent with existing national laws or State camp laws" subject to the approval of the higher officers and (§2) that any addition or amendments to the local laws of a subordinate camp shall be read at two successive meetings before final action. "The members shall be furnished with a copy of the proposed additions or amendments with notice thereof sent to each member, setting forth the time when action on same will be taken. A two thirds majority vote of the member[s] present will be necessary to adopt such additions or amendments."

We assume that the by-laws of the state camp also contained the following section: "Any camp may by a vote of three fourths of the members present, and the approval of the state executive committee, (set aside or alter the beneficial law.)"

Disability and death benefits were provided and paid by the local camp and it must be inferred that such provisions were within the powers of such camp and that the by-laws as they existed prior to April 27, 1933 were adopted with the approval of the state camp. As we have seen, the proposed change was not accomplished in the manner provided by the by-laws of the local camp, nor was it in accord with the by-laws of the state camp, for it is admitted that notice in writing setting forth when action would be taken on the proposed change was not sent to each member. The laws of the state camp dealing with the laws of the local camp specifically required that such notice should be given.

Appellant also relies on the provisions of the state camp laws which provided that a local camp might, with the approval of the state executive committee, set aside or alter the beneficial law and that such consent

was given. The weakness in that position is that all the state camp laws authorized and all that the consent actually given accomplished was to grant authority to the local camp to amend or alter its by-laws with relation to benefits. The action by the state committee did not make the change, for the parent lodge, acting through its committee, merely gave permission to the local camp to make a definite change. This change, an attempt to amend or alter the by-laws, was not accomplished for the local camp did not act in the manner prescribed by either the local or the state camp laws. The matter was one which affected directly the local camp for it paid the benefits and the parent camp only exercised a supervisory or regulatory control of the local action.

The attempted change without compliance with the by-laws being invalid, the parties were governed by the laws in force when plaintiff's rights arose and the defendant is liable for the amount claimed by plaintiff in both capacities.

However, the plaintiff in her capacity as administratrix is entitled to judgment for the amount due for the disability of her decedent, and in her individual capacity as widow she is entitled to judgment for the death benefits, while one judgment was entered for the plaintiff. The parties by stipulation filed in this court have waived any objection as to the joinder in one action of Mary Wallace individually and as administratrix, to the end that proper judgments may be entered and delay avoided. In accordance with the views expressed in this opinion it is directed that the judgment entered be stricken off and that judgments be entered for the plaintiff individually for the amount of the death benefits and for her as administratrix for the amount of the disability benefits.

Judgment affirmed as modified.

Judge RHODES did not sit on this case or take any part in the deliberations of the court.